UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DOROTHY D. GEORGE,

        Plaintiff,

-against-

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.
------------------------------------------------------------x

**MEMORANDUM & ORDER**
Case No. CV-04-1545 (FB)(RLM)

*Appearances:*
*For the Plaintiff:*
GEORGE POULOS, ESQ.
29-16 23rd Avenue
Astoria, New York 11105

*For the Defendant:*
ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney
Eastern District of New York
By: MARGARET A. DONAGHY
Special Assistant United States Attorney
One Pierrepont Plaza, 14th Floor
Brooklyn, New York 11201

**BLOCK, District Judge:**

    Plaintiff Dorothy D. George ("George") seeks review of the final determination of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). Both parties move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Because the Administrative Law Judge ("ALJ") did not properly evaluate George's subjective complaints of pain, the case is remanded for further proceedings.

I.

    George filed for DIB benefits in January 2000, claiming that she became disabled in June 1995 on account of symptoms of lupus, diabetes mellitus, hypertension and hyperlipidemia and their associated medications. Because George was only insured

for disability benefits until December 31, 1999, she must establish that she suffered from a disability as of that date.

After her claim was denied, George requested a hearing before an ALJ, which took place on November 21, 2001; George was represented by counsel. The hearing could not have lasted longer than several minutes because George was the only witness who testified and the transcript of her testimony consumed just six pages. At the conclusion of the hearing, the ALJ noted that he had several reports from George's treating physician, Dr. Harry Prophete ("Dr. Prophete"), but did not have one from a consultative medical examiner; therefore, the ALJ directed that George be examined by an SSA internist. She complied, and was examined by Dr. Arnold Berlin ("Dr. Berlin"), who submitted a report to the ALJ. The ALJ then denied George's claim without taking any additional testimony.

The Administrative Record ("A.R.") principally consists of George's testimony and Drs. Prophete and Berlin's reports.

### A. Testimony

George testified that she became unable to work in June 1995; however, she also testified that she stopped working as a data processing clerk in June 1995 because she took an early retirement package from her employer, for whom she had worked for twenty-four years. *See* A.R. at 140. She explained that she did not file an application for disability benefits until January 2000 because she was not aware that she could simultaneously receive disability benefits and a pension. *See id.*

When asked if she could "do any kind of work," George answered that she did "n[o]t think so . . . due to [the] medications that [she] t[ook]." *Id.* at 141. She claimed that the medications caused her to be "sleepy a lot" and "dizzy most of the time," and

2

noted that without the medication she suffered a "lot of pain." *Id.* at 141- 42. She subsequently stated that she suffered dizzy spells approximately "twice a week", that her vision was deteriorating and that she had blurred vision during the dizzy spells. *See id.* at 142.

George also testified that although she was "sometimes" able to do household work, her husband and daughter, both of whom live with her, did the majority of the work and that she did not do "household chores like [she] used to." *Id.* at 141, 143. She noted, however, that she was able to take public transportation by herself. *See id.* at 143.

**B. Medical Opinions**

**1. Treating Physician's Opinions**

On April 24, 2000, Dr. Prophete, George's treating physician since July 1997, completed a form supplied by the Social Security Administration ("SSA"). On the form, he noted that George suffered from "fatigue, shortness of breath, vertigo , joint pain [and] bilateral foot pain." *See id.* at 107. He stated that she had a full range of motion but that she suffered fatigue after "walking about three blocks" and while doing "household chores," and opined that she must rest for "about an hour" after completing those activities. *Id.* at 108-09. Finally, he assessed that she was not limited in the duration that she could sit but could only walk and/or stand for four hours in an eight hour work day. *See id.* at 110.

On May 7, 2000, Dr. Prophete completed an SSA Residual Functional Capacity ("RFC") Assessment form. In this assessment, he reiterated that George suffered "joint and foot pain" and that her joints had a "normal" range of motion. *Id.* at 96. He additionally noted that George's statements regarding her pain were "found credible" and that the "pain [wa]s under control with medication and [wa]s relieved," and that there

3

were "no *noticeable* side effects." *Id.* at 102 (emphasis added). Also, he opined, in contrast to his assessment from the previous month, that George could sit for only six hours in an eight-hour workday and could stand and/or walk for only six hours in an eight-hour workday. *See id.* at 96.

On July 15, 2000, Dr. Prophete completed another form supplied by the SSA. On that form, he reiterated that George suffered from fatigue and that she had to "lie down" for "about one to two hours" during the day, and stated that one of the medications that George took "may cause drowsiness." *Id.* at 116. He assessed that she could sit for up to six hours continuously, but now stated – in contrast with his prior two assessments – that she could stand and/or walk for only forty-five minutes continuously for a total of four hours in an eight-hour workday. *See id.* at 117.

### 2. Consulting Physician's Opinion

On January 30, 2002, Dr. Berlin, the internist who examined George at the request of the SSA, completed a written report. He noted that George experienced "weakness across the joints due to stiffness and pain" and "ha[d] a limp when she walk[ed] due to pain and stiffness of the left knee." *Id.* at 129. Thereafter, Dr. Berlin opined that the "lupus apparently [wa]s confined to skin where there [wa]s alopecia [hair loss] and small circumscribed lesions and various joint[ ] aches," and that there was no "evidence of *significant* synovitis or deformity." *Id.* (emphasis added).

Dr. Berlin next opined that George "ha[d] some limitations due to her joint complaints, but should be available for sedentary activities," and noted that she was "capable of sitting for at least four hours consecutively" and "stand[ing] for a period of up to fifteen minutes." *Id.* at 131. However, in a separate form completed on the same date

4

for the SSA, he assessed that George had "no limitation" in sitting and was capable of standing "at least two hours in an eight hour workday"; on that same form, he noted that there were "few objective findings[,]" but that the joint pain was "due to lupus." *Id.* at 134.

**C. ALJ's Determination**

On June 14, 2002, the ALJ determined that George did not qualify for DIB. The ALJ applied the requisite five-step procedure for evaluating disability claims:

> At the first step, the agency will find non-disability unless the claimant shows that [s]he is not working at a 'substantial gainful activity.' At step two, the SSA will find non-disability unless the claimant shows that [s]he has a 'severe impairment,' defined as 'any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities.' At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do h[er] previous work; unless [s]he shows that [s]he cannot, [s]he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called 'vocational factors' (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (internal quotations and citations omitted).

In regard to the first step, the ALJ found that George was not working at a substantial gainful activity. In regard to the second step, the ALJ determined that George's diabetes mellitus, hypertension and lupus were severe. In regard to the third step, the ALJ found that George's severe impairments did not meet or equal one of the impairments listed in Appendix 1 of the regulations. In regard to the fourth step, the ALJ determined

5

that George could perform her previous work as a data processing clerk. Although the ALJ could have stopped his analysis at step four, the ALJ also determined, as an alternative finding, that "even if [George] could not perform her past work as a data entry clerk because of joint pain," she would not qualify as disabled under step five because she was capable of performing a "full range of sedentary work." *See* A.R. at 19-20.

In support of his findings, the ALJ recounted Drs. Prophete and Berlin's assessments and stated that Dr. Prophete's assessment "concerning [George's] impairments appear[ed] to be based more on [her] subjective complaints of fatigue and tiredness and on her appearance rather than on objective medical evidence," and that Dr. Berlin "admitted that there were few objective findings supporting [George's] limitations." *Id.* at 18. Ultimately, the ALJ found that George's subjective complaints pertaining to the "nature and severity of her pain and other symptoms" were "not fully credible" because they were "inconsistent with her assertions to [Dr. Berlin that she performed light household chores]" and because "the record suggest[ed] that [George] stopped working because of the opportunity for early retirement was presented, rather than because of a disability." *See id.* at 19.

On February 21, 2004, the Appeals Council denied George's request for review, which constituted the final decision of the Commissioner.

II.

George primarily challenges the ALJ's findings on the ground that the ALJ failed to adequately assess George's subjective complaints of pain and fatigue. The Court agrees.

The ALJ must consider the claimant's subjective complaints about her symptoms, "such as pain [or] fatigue . . . ,' at each step of the sequential evaluation

process." 20 C.F.R. § 404.1529(b). The Second Circuit has held that "[u]nder appropriate circumstances, the subjective experience of pain can support a finding of disability." *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (citation omitted); *see also Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984) (same).

> A claimant who alleges a disability based on the subjective experience . . . need not adduce direct medical evidence confirming the extent of [the complaint], but the applicable regulations do require "medical signs and laboratory findings which show that [the claimant has] a medical impairment(s) which could reasonably be expected to produce [the complaint]."

*Snell*, 177 F.3d at 135 (quoting (20 C.F.R. § 404.1529(a)) (alterations in original). Therefore, the ALJ cannot "reject[ ] . . . the claimant's testimony based on the mere absence of objective evidence." *Fragale v. Chater*, 916 F. Supp. 249, 254 (W.D.N.Y. 1996).

The relevant analysis for the ALJ to perform is set forth in 20 C.F.R. § 404.1529. "First, based upon the objective medical evidence, the ALJ must determine whether the impairments could reasonably be expected to produce the pain . . . Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work." *Barringer v. Commissioner of Social Sec.*, 358 F. Supp. 2d 67, 81 (N.D.N.Y. 2005) (internal citations and quotations omitted). The analysis is identical for complaints of fatigue. *See* 20 C.F.R. § 404.1529.

In the present case, the ALJ did not correctly consider George's subjective complaints of either pain or fatigue because he never assessed whether they were consistent with lupus and diabetes, and their associated medications. Furthermore, it

7

appears that the ALJ improperly relied on the lack of objective support for the pain and fatigue. *See* A.R. at 18 (discounting assessments by Drs. Prophete and Berlin because Dr. Prophete's "appear[ed] to be based more on [her] subjective complaints of fatigue and tiredness and on her appearance rather than on objective medical evidence" and Dr. Berlin "admitted that there were few objective findings supporting [George's] limitations.").

It is evident that some degree of both pain and fatigue are consistent with George's uncontested diagnosis of lupus and with her medications; in regard to pain, both Drs. Prophete and Berlin opined that George's complaints of pain were consistent with lupus, *see id.* at 102 (Dr. Prophete noted that the complaints of pain were "credible"); *id.* at 134 (Dr. Berlin noted that pain was "due to lupus"), and in regard to fatigue, Dr. Prophete noted that one of George's medications caused drowsiness; Dr. Berlin did not state anything to the contrary. *See id.* at 116. Accordingly, because it is clear that the impairments could reasonably be expected to produce some pain and fatigue, and because this error may have affected the Commissioner's determination in regard to both steps four and five, the determination cannot stand.

## CONCLUSION

Remand for further development of the record is appropriate "where the administrative record contains gaps," *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002), or where "the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quotations and citations omitted). Thus, the Court remands to allow the ALJ to further develop the record and to thereafter make findings in accordance with this Memorandum and Order.

**SO ORDERED.**

FREDERIC BLOCK
United States District Judge

Brooklyn, New York
September 23, 2005